## UNITED STATE DISTRICT COURT
## DISTRICT OF MINNESOTA

---

BreathableBaby, LLC,                                    File No. 12-cv-94 (PJS/TNL)

        Plaintiff/Counter Defendant,

v.

                               **ORDER OPINION**

Crown Crafts, Inc.; and
Crown Crafts Infant Products, Inc.,

        Defendants/Counter Claimants.

---

Erik G. Swensen and Laura J. Borst, **Fulbright & Jaworski, LLP**, 80 South Eighth Street, Suite 2100, Minneapolis, MN 55402; and George Washington Jordan III, **Fulbright & Jaworski, LLP**, Fulbright Tower, 1301 McKinney Street, Suite 5100, Houston, TX 77010, for Plaintiff; and

Joshua P. Gunnemann and Phillip S. McKinney, **Rogers & Hardin, LLP**, 2700 International Tower, 229 Peachtree Street Northeast, Atlanta, GA, 30303; and Katherine A. Moerke and Ruth A. Rivard, **Leonard Street & Deinard, PA**, 150 South Fifth Street, Suite 2300, Minneapolis, MN 55402, for Defendants.

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Plaintiff's Motion to Compel (ECF No. 56). Erik G. Swenson argued on behalf of Plaintiff, and Joshua P. Gunnemann argued on behalf of Defendants. For the reasons set forth herein, Plaintiff's Motion to Compel (ECF No. 56) is **GRANTED IN PART** and **DENIED IN PART**.

## I.     OVERVIEW

BreathableBaby, Inc. ("BreathableBaby") commenced this lawsuit on January 11, 2012, alleging that Crown Crafts, Inc. and Crown Crafts Infant Products, Inc.

1

(collectively "Crown Crafts") willfully infringed BreathableBaby's patented "Crib Shield System and Other Breathable Apparatus," U.S. Patent No. 7,055,192 ("the '192 patent") by making, offering to sell, and selling infringed products within the United States and importing them into the United States. (ECF No. 1 (Compl.) at ¶¶ 32-38.) Crown Crafts denied infringement and filed counterclaims for declaratory judgment of non-infringement and invalidity. (ECF No. 2.) On April 16, 2012, the parties filed a Joint ESI Discovery Plan, which provides in relevant part that "[t]he Producing Party will also provide the Requesting Party with proposed keyword search terms (as opposed to search strings) devised to capture ESI responsive to the document requests made by the Requesting Party while limiting the set of resulting documents to a reasonable volume." (ECF No. 13.)

Crown Crafts moved for summary judgment on May 14, 2012. (ECF No. 20.)  To accommodate discovery and depositions for this early motion, the parties agreed to depart from the ESI plan. (Tr. 22-24.) In order to provide relevant discovery in a short period of time, Crown Crafts informed BreathableBaby that it would determine which documents to provide not by employing search terms, but rather by reviewing all of its employees' materials for responsiveness. (Pl.'s Mem. in Supp. at 9; Defs.' Mem. in Supp. at 15.) BreathableBaby agreed to this and served its first set of interrogatories and document requests on May 25, 2012. (Liudahl Decl. Exs. 1, 5.) Crown Crafts produced 900 documents in two weeks at the end of May 2012. (Tr. 8.)

United States District Court Judge Patrick J. Schiltz deferred ruling on Crown Crafts' motion for summary judgment (ECF No. 40), and discovery resumed. In mid-

September 2012, Crown Crafts identified the custodians it had searched and confirmed that it did not use search terms to assist in producing documents. (Moerke Decl. Ex. A.) On September 24, 2012, Crown Crafts produced a CD containing responsive documents and informed BreathableBaby that this production completed its discovery obligations. (*Id.* Ex. C.)

On December 31, 2012, BreathableBaby served further discovery requests as well as deposition notices of Olivia Elliott, E. Randall Chestnut, and both Defendants pursuant to Rule 30(b)(6). (*Id.* Ex. D.) One week later, BreathableBaby noticed the depositions of Deborah Dunne and Nanci Freeman. (*Id.* Ex. E.) Crown Crafts responded to BreathableBaby's additional discovery requests by preparing and producing several summary documents showing sales, revenue, and forecasting information. (*Id.* Ex. P.) BreathableBaby deposed Freeman individually and as Crown Crafts' 30(b)(6) representative on January 29, 2013; Elliot individually and as Crown Crafts' other 30(b)(6) representative on January 30, 2013; and Dunne on January 31, 2013.

BreathableBaby asserts that after the depositions, it became aware of serious flaws in Crown Crafts' discovery productions and responses to document requests. BreathableBaby now seeks an order compelling Crown Crafts: (1) to answer fully to written discovery; (2) to appear for additional deposition testimony; and (3) to provide a properly detailed privilege log. Crown Crafts opposes the motion, arguing that (1) its collection efforts were reasonable and agreed upon by the parties; (2) BreathableBaby is not entitled to additional deposition testimony; and (3) Crown Crafts' privilege log is sufficiently detailed. Both parties request attorney's fees and costs.

## II.   ANALYSIS

### A. Standard of Review

The Federal Rules of Civil Procedure allow a party "to obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see* Fed. R. Evid. 401 (defining "relevant evidence" as "evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"). "Relevance is construed broadly at the discovery stage." *Heilman v. Waldron*, No. 11-cv-1930 (JRT/SER), 287 F.R.D. 512, 522 (D. Minn. 1992) (noting "[r]elevancy, in the discovery context, is extremely broad").

> The wide scope of discovery under [Rule 26] allows parties to obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Information sought in discovery need not be admissible at trial, so long as it appears reasonably calculated to lead to the discovery of admissible evidence.

*Heilman*, 287 F.R.D. at 473 (quoting Fed. R. Civ. P. 26(b)(1)).

This Court "has considerable discretion in granting or denying discovery requests." *Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 534 (D. Minn. 2008). Nonetheless, some threshold showing is necessary "before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992); *see also Bredemus*, 252 F.R.D. at 532 (describing relevancy as "not without bounds").

### B.  Written Discovery

BreathableBaby requests an order compelling Crown Crafts to produce (1) relevant information per the ESI order; (2) product specifications and design sheets for the accused mesh crib liners; (3) purchase and shipment requests; (4) retailer sales forecasts; and (5) communications with third parties regarding the instant lawsuit and patent-in-suit.  Crown Crafts contends that (1) its collection efforts were reasonable and agreed upon by the parties; (2) all other documents requested by BreathableBaby's Motion have been produced; and (3) additional production would be unduly burdensome.

### 1.  Collection of Relevant Information Per the ESI Order

BreathableBaby requests this Court to order Crown Crafts collect relevant information by following the protocol laid out in the joint ESI order. BreathableBaby served its first set of request for production of documents on Crown Crafts on May 25, 2012.  (ECF No. 59-1, Ex. 1.)  Crown Crafts responded on August 9, 2012.  (*Id.*) Crown Crafts takes the position that its method of uncovering and producing relevant documents effectively complied with the ESI plan: company executives conferred with counsel and identified the custodians who were most likely to have information relevant to BreathableBaby's requests; and Crown Crafts then collected and reviewed these custodians' emails for relevant documents and provided any responsive documents to BreathableBaby. (Defs.' Mem. in Opp'n at 12-13.) To ensure that the selected custodians did not miss any potentially relevant material, Crown Crafts "conducted a search across the custodians' entire email space (including the users' live inbox, sent items, deleted items, and archive folders) for the terms 'mesh,' 'crib,' 'liner,' and 'BreathableBaby.'"

5

*Id.* at 14. Notably, Crown Crafts did not search the selected custodians' other files or folders for responsive materials. (Tr. 27.)

The ESI plan provides that a party that was dissatisfied with the way in which electronically stored information was being collected should request a meet and confer to attempt to settle the dispute. *See* ECF No. 13. Early in the discovery process, however, Crown Crafts represented that it would produce everything rather than engage in the meet-and-confer process as outlined in the ESI order so that it could get responsive documents to BreathableBaby in time for the scheduled depositions. Crown Crafts applied this exception to the ESI plan to their discovery production as a whole. Crown Crafts did not, as its representations to BreathableBaby implied, search "everything," but instead picked the files, folders, and custodians it searched. It provided no instruction to its identified custodians on the types of documents to search, whether to check with any subordinates who might also have responsive documents, or how to search for the documents. *See* Elliott Dep. 80, 82-85. This is the kind of incomplete and somewhat haphazard discovery that the ESI plan should have prevented.

Based on the above, the Court shall reopen discovery so that production can commence in accordance with the parties' joint ESI plan. Accordingly, the parties shall meet and confer regarding (1) search protocol, search terms and custodians, and (2) amendment of the Pretrial Scheduling Order no later than one week from the date of this Order. The parties shall files a proposed amended pretrial scheduling order for the Court's review no later than two weeks from the date of this Order.

### 2.  Product Specification Sheets

BreathableBaby also asserts that Crown Crafts has failed to produce all specification and designs related to the creation of their mesh crib liners and requests this Court order Crown Crafts to produce such documentation. Crown Crafts responds that all specification sheets for the mesh crib liners have been produced. The production of product specifications and design sheets was addressed in BreathableBaby's first document production request:

> **Request No. 14:** All documents related to the design or engineering of Crown Crafts' products.
>
> **Response:** Defendants also object to this Request to the extent that it seeks information that constitutes or otherwise reveals trade secrets, proprietary business information, or other private, confidential information.  Subject to this objection, Defendants will produce any non-privileged and responsive documents.
>
> **Request No. 42:** Specifications for Crown Crafts' products, including all technical specifications and drawings.
>
> **Response:** Defendants object to this Request to the extent that it seeks to require information that is equally available to Plaintiff or can be obtained from public sources.  Defendants also object to this Request to the extent that it seeks information that constitutes or otherwise reveals trade secrets, proprietary business information, or other private, confidential information.   Subject to these objections, Defendants will produce any non-privileged and responsive documents.

ECF No. 59-2, Ex. 1, 2.

Information regarding product design and specifications is both highly relevant to the instant case and discoverable. Crown Crafts has produced a design sheets for revision 7 of both the Harmony and Pretty in Purple designs. Liudahl Decl. Exs. 10-11. It has not,

however, produced any documentation related to versions 1 through 6 of either design. It has also produced specification sheets for the mesh crib liner prototype and two production versions of the crib liner but not any design and specification information for the mesh liners that it advertised and marketed at the 2011 ABC Kids Expo. Elliot Decl. Exs. A, B, E; *see also* Liudahl Decl. Ex. 9. Even if, as Crown Crafts represents, the designs were all made to the same specifications and varied only with respect to what fabric or pattern was used, the design and specification sheets go to the very heart of this dispute and therefore should be produced. Because Crown Crafts searched only the product-development shared drive for such documents, however, the Court is not convinced that other relevant documents regarding the design and specifications of the allegedly infringing product do not exist. Accordingly, BreathableBaby's motion will be granted with respect to design and specification sheets to the extent that they have not yet been produced, and the parties shall include such materials in their ESI discussions as set forth above.

### 3.  Purchase and Shipment Requests

BreathableBaby also seeks to compel Crown Crafts to produce purchase and shipment requests associated with the mesh crib liners. Document Request Nos. 43 and 44 in Plaintiff's First Set of Requests for Production provide:

> **Request No. 43:** All documents related to marketing or sales strategies for Crown Crafts' Products, including correspondence and communications with Crown Crafts' sales personnel.

> **Request No. 44:** All documents related to marketing or sales of Crown Crafts' products in conjunction with its Crib Liner Products.

BreathableBaby, however, contends that Crown Crafts' production of shipping and purchase orders is insufficient because the report of these orders is allegedly inconsistent with previous information produced by Crown Crafts. Thus far, Crown Crafts has produced an order report comprising orders collected from its database. BreathableBaby requests access to the data underlying this report, including any and all requests for any form of the accused product by customers or retailers, whether or not it was ultimately delivered.

Request Nos. 43 and 44 plainly encompass purchase orders. Any argument that a purchase order does not fall within the reach of "all documents related to marketing or sales" must be rejected, as must Crown Crafts' representation that it has already produced information concerning "every fulfilled order." (Defs.' Mem. in Opp'n at 21.) The plain wording of the requests covers any documentation concerning offers to sell or successful sales of any version of Crown Crafts' mesh crib liner. This includes any and all requests for the accused product by customers or retailers, even if never ultimately delivered, as well as requests made based on any form of the accused product, whether that be a prototype, sample, design specification, or final product. This is not a "fishing expedition" into Crown Crafts' database; rather, it is a request for relevant information regarding the purchase and shipment of the accused mesh crib liners, whether fulfilled or unfulfilled, prototype or final product. Accordingly, BreathableBaby's motion is granted with respect to the production of all purchase and shipment requests to the extent that this information exists and has not yet been produced.

### 4.  Retailer Sales Forecasts

BreathableBaby also argues that Crown Crafts should be ordered to produce sales forecasts and projections from retailers. (*See* Document Request No. 31.) Crown Crafts asserts that they have produced internal sales forecasts, as well as forecast information provided by three of Crown Crafts' largest customers. Crown Crafts' sales forecasts of the purportedly infringing products are both discoverable and relevant to the patent infringement dispute at hand. Ms. Freeman stated in her individual deposition that Crown Crafts compiles sales forecasts using information that it receives from individual retailers (*see* Freeman Dep. at 143-46), and Crown Crafts asserts it has produced such sales forecasts based on information from Amazon, Babies 'R' Us, and Wal-Mart. To the extent that other such sales forecasts exist, they are relevant and discoverable. *See Snellman v. Ricoh Co. Ltd.*, 862 F.2d 283, 289 (Fed. Cir. 1988) (finding that the jury was entitled to rely on sales projections in determining damages). Accordingly, BreathableBaby's motion will be granted with respect to its request for retailer sales forecasts.

### 5.  Communications with Third Parties

BreathableBaby's request for third-party communications and Crown Crafts response are as follows:

> **Interrogatory No. 11:** Identify and describe in detail each communication, including correspondence, you had with any third party relating to this litigation or the Patent-in-Suit, including identifying the third party and identifying all persons knowledgeable of such communications.
>
> **Answer to Interrogatory 11:** Defendants object to this Interrogatory to the extent that it seeks discovery of information protected by the attorney-client privilege, the work product doctrine, the joint-defense

privilege, the accountant-client privilege, the business-strategy or similar immunity, or any other applicable privileges or immunities from discovery recognized under applicable law. Defendants object because this Interrogatory is overbroad, unduly burdensome, not relevant to the claims and defenses in this action, and not reasonably calculated to lead to the discovery of admissible evidence. Given the volume of communications regarding this litigation or the patent that is the subject of this suit, it would be unduly burdensome to list each communication separately, particularly in light of the fact that these communications are of little or no relevance to this suit. Rather than list communications separately, Defendants respond as follows: Defendants have had communications with customers in response to inquiries concerning the lawsuit and the patent that is the subject of the lawsuit, to which Defendants have generally responded that they believe they have meritorious defenses. Defendants have publicly disclosed those communications by reference in their 10Q, annual report, and other public filings.

Crown Crafts asserts that it has fulfilled its obligation to produce third-party communications by collecting and producing communications from key officers, producing all non-privileged communications about the lawsuit and patent-in-suit, swearing to the substance of any verbal communications about the lawsuit and patent-in-suit, and identifying public statements made about the litigation in investor communications.

True, as Crown Crafts asserts, all third-party communications regarding the lawsuit and patent-in-suit may not be relevant insofar as they have no bearing on the discovery of admissible evidence. *See* Fed. R. Civ. P. 26(b)(1). There are, of course, third-party communications that may contain relevant information to this matter and are properly within the scope of discovery. Accordingly, to the extent that Crown Crafts is aware of relevant third-party communications that are both readily known and available, it will produce them. Thus, BreathableBaby's motion is granted with respect to third-

party communications regarding the lawsuit and patent-in-suit to the extent that this information is readily known and available and has not yet been produced.

### C. Additional Deposition Testimony

BreathableBaby also requests an order compelling Crown Crafts to appear for additional deposition testimony. Crown Crafts opposes the request, arguing: (1) BreathableBaby's inaction is to blame for not having all necessary documents prior to depositions; (2) Nanci Freeman did not improperly refuse to answer questions, as she was not required to speculate or testify about information of which she had no personal knowledge; and (3) Crown Crafts' 30(b)(6) witnesses were adequately prepared.

### 1. Additional Deposition Testimony Based on Newly-Acquired Documents

BreathableBaby argues that, because of the additional documents produced after depositions were completed, it is entitled to further depositions to question witnesses about the later-produced materials. Crown Crafts asserts that it had not produced the documents relevant to the depositions earlier because BreathableBaby did not ask for them, and that BreathableBaby should not be rewarded for its inaction and delay. It further argues that the very information for which BreathableBaby asserts it needs additional deposition testimony was made available before the depositions.

Crown Crafts produced many documents after the discovery deadline. It is concerning that BreathableBaby did not make these requests until minutes before the fact discovery deadline on February 1, 2013; more concerning, however, is the fact that Crown Crafts had not yet produced the requested documents. These documents— internal

sales forecasts, financial reports, pricing lists, purchase order forms, a report of electronically-placed orders, mesh crib liner prototypes and samples, unredacted manufacturing costs information, patent application documents, and a patent valuation analysis—are indisputably relevant to this action and should have been produced before the depositions. The timing of Crown Crafts' production impeded BreathableBaby's ability to process the information and ask meaningful questions of Crown Crafts' representatives. Accordingly, BreathableBaby's motion is granted with respect to the request for additional deposition testimony based on newly received documents. Such additional deposition testimony shall address only information in the later-produced documents that BreathablyBaby did not have before the depositions.

## 2. Additional Deposition Testimony of Nanci Freeman

BreathableBaby further asserts that Nanci Freeman, the President and CEO of Crown Crafts Infant Products, Inc., improperly refused to answer questions regarding Crown Crafts' revenues and improperly left the deposition temporarily at her counsel's instruction, and therefore should be required to re-appear for additional deposition testimony. Crown Crafts argues that it would be unreasonable to require Ms. Freeman to reappear because her refusal to speculate about revenue information from the sale of crib liners was proper.

Rule 30(c)(2) provides that "[a] person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Although this rule limits the circumstances in which counsel can direct its client not to answer a question, it does not stop a deponent

from prudently asserting his lack of knowledge or an inability to answer a question. A review of the record shows that no one directed Ms. Freeman not to answer revenue-related questions; rather, Ms. Freeman asserted that she did not have specific memory of Crown Crafts' revenues and declined to speculate as to those specific numbers. Ms. Freeman is not required to answer a question she does not know the answer to and should not be compelled to speculate. Accordingly, BreathableBaby's motion is denied in respect to the requested additional deposition testimony from Ms. Freeman.

### 3.   Additional 30(b)(6) Deposition Testimony

Fed. R. Civ. P. 30(b)(6) provides:

> [A] party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify.  A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

BreathableBaby asserts that Crown Crafts' 30(b)(6) witnesses were not properly prepared to testify on topics designated in the deposition notice—specifically it contends that Ms. Freeman was not able to discuss the mesh crib liners at issue without referencing a specification sheet and that Ms. Elliot failed to bring the necessary accounting reports and sales forecasts to substantively answer questions.

The only issue that BreathableBaby raises regarding Ms. Freeman's preparedness for her 30(b)(6) deposition is her refusal to speculate on the dimensions of the allegedly

infringing product without first consulting a specification sheet. Ms. Freeman's request to consult the specification sheet does not show that she was unable to "testify about information known or reasonably available to the company."  Fed. R. Civ. P. 30(b)(6). This Court is not aware of any requirement that a Rule 30(b)(6) witness be able to testify at a deposition without referencing documentation to supplement the testimony. BreathableBaby's complaint in regards to the deposition testimony falls short of the mark and, thus, is not entitled to additional deposition testimony from Ms. Freeman.

Moreover, BreathableBaby's assertion that Ms. Elliot was unprepared to testify about information known or reasonably available to the company fails. "As a practical matter . . . the Rule 30(b)(6) deponent is not expected to be clairvoyant, so as to divine the specific questions that could require the assist of a demonstrative aid." *Arctic Cat, Inc. v. Injection Research Specialists, Inc.*, 210 F.R.D. 680, 686 (D. Minn. 2002). Ms. Elliott cannot be expected to have predicted the exact questions she would face in deposition, and a Request for Production tailored to the topics that BreathableBaby wanted to address—especially areas as factually intensive as financial forecasts, budgets, and accounting reports—would have ensured that the deposition was fruitful. The Court cannot, however, determine that Ms. Elliott was unprepared for her deposition on the basis that she did not bring documents that she was never told to bring.

Accordingly, because both Ms. Freeman and Ms. Elliot were adequately prepared to testify as to their respective subject matter, BreathableBaby's motion is denied with respect to the request for additional deposition testimony of Crown Crafts' Rule 30(b)(6) representatives about matters already covered in deposition. To the extent that

BreathableBaby receives new discovery from Crown Crafts as a result of this Order, however, BreathableBaby shall have the opportunity to depose Crown Crafts' 30(b)(6) representatives on only the newly-received discovery materials.

### D. Crown Crafts' Privilege Log

Crown Crafts' privilege log lists 1,247 documents that are being withheld from production based upon attorney-client privilege and the work-product doctrine. BreathableBaby contends that Crown Crafts' privilege log is not sufficiently detailed to enable BreathableBaby to fairly evaluate the claims of privilege and requests this Court to compel Crown Crafts to (1) provide a properly detailed privilege log that identifies job titles of senders and recipients of privileged communications and includes more in-depth document descriptions and privilege claims; (2) separately identify all previously unproduced e-mails contained in e-mail strings; and (3) provide an affidavit attesting, under oath, to Crown Crafts claims of privilege for all documents included in the privilege log. Crown Crafts, however, maintains that it has fulfilled its obligations with respect to the privilege log.

Rule 26(b)(5)(A) provides:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make a claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Although "[t]here is no 'privilege log' rule . . . , the privilege log is a convention of modern legal practice." *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441 (D. Minn. 2011). This court has previously found a privilege log that including the following categories is sufficient to satisfy the requirements of Fed. R. Civ. P. 26(b)(5): Author/Source, Recipient(s), CC(s), Date, Description, Privilege Asserted, and Beginning of Bates Number of Produced Version. *See id.* at 447.  In the same vein, notations of whether named individuals are attorneys provide further assistance in determining whether the claimed privilege is applicable.  *See id.*

### 1.  Adequacy of Crown Crafts' Privilege Log

Crown Crafts' privilege log contains the following categories: Document ID, Bates Number, Date, Document Type, From, Recipient(s), CC(s), Privilege Claim, and Description. In the log, Crown Crafts places an asterisk next to attorneys' names and asserts that additional individuals appearing on the log are employees of Crown Crafts, about whom BreathableBaby has organizational charts showing persons' positions within the organization. From the information provided in the privilege log, it appears that BreathableBaby is, in fact, able to assess the applicability of the claimed privileges.  The privilege log sufficiently "describe[s] the nature of the documents, communications, or tangible things not produced or disclosed" as required under Rule 26(b)(2)(A). Accordingly, BreathableBaby's motion is denied with respect to the request to compel Crown Crafts to provide a more detailed privilege log.

17

## 2.  E-mail Strings

Although this Court finds that Crown Crafts provided a sufficiently detailed privilege log in regards to the substance of the log, the e-mail strings contained within that log pose a different question. BreathableBaby asserts that each communication within an email string should be treated as an independent communication and requests this Court to order Crown Crafts to separately identify all previously unproduced e-mails contained in the e-mail strings included in their privilege log. Crown Crafts, however, argues that requiring it to separately list each e-mail in a string that was eventually sent to counsel could reveal privileged attorney-client communications.

Authorities are divided as to whether e-mail strings should be logged as one document or whether each e-mail in a string should be logged separately. *Compare United States v. Chevron Texaco Corp.*, 241 F. Supp. 2d 1065, 1074 n.6 (N.D. Cal. 2002) ("Each e-mail/communication consists of the text of the sender's message as well as all of the prior e-mails that are attached to it.  Therefore, [defendant]'s assertion that each separate e-mail stands as an independent communication is inaccurate."), *with In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 674 (D. Kan. 2005) ("The court strongly encourages counsel, in the preparation of future privilege logs, to list each e-mail within a strand as a separate entry. Otherwise, the client may suffer a waiver of attorney-client privilege or work product protection."), *and Stafford Trading Inc. v. Lovely*, 2007 WL 611252, at *8 (N.D. Ill Feb. 22, 2007) (treating an e-mail which forwarded a second e-mail as two separate communications, and then holding that

privilege was waived as to both such "communications" if either was sent to an unidentified recipient.)

Recently, however, courts are moving in the direction of requiring litigants to log separately each e-mail in a string. Individual logging of each e-mail in a string makes it easier to evaluate and challenge any claims of privilege over numerous e-mails in a string. *See In re Vioxx Prods. Liab. Litig.*, 501 F. Supp. 2d 789, 812 (E.D. La. 2007) ("Simply because technology has made it possible to physically link these separate communications (which in the past have been separate memoranda) does not justify treating them as one communication and denying the demanding party a fair opportunity to evaluate privilege claims raised by the producing party."). Requiring separate e-mail entries prevents parties from trying to safeguard non-privileged communications from future discovery by copying counsel on e-mails or forwarding e-mail chains to counsel. *Baxter Healthcare Corp. v. Fresenius Med. Care Holding, Inc.*, 2008 WL 4547190, at *1 (N.D. Cal. 2008) ("Each e-mail is a separate communication, for which a privilege may or may not be applicable. Defendants cannot justify aggregating authors and recipients for all e-mails in a string and then claiming privilege for the aggregated e-mails.").

In *Muro v. Target Corp.*, the court sustained Target's objection to the Magistrate Judge's ruling that its privilege log was inadequate because it did not separately itemize each individual e-mail in a string:

> Even though one e-mail is not privileged, a second e-mail which forwards that prior e-mail to counsel might be privileged in its entirety. In this respect, the forwarded material is similar to prior conversations or documents that are quoted verbatim in a letter to a party's attorney

19

> A party can therefore legitimately withhold an entire e-mail *forwarding* prior materials to counsel, while also disclosing those prior materials themselves. It could well be confusing to require a party to list documents in its privilege log that it had already furnished to opposing counsel. More troublingly, the disclosure of this information could very well be a breach of attorney-client privilege. If the opposing party can gather enough material from the log and already produced materials to discover the topic or contents of material forwarded to counsel, then a privileged communication has been revealed to that party.  Rule 26(b)(5)(A) requires only that a party provide sufficient information for an opposing party to evaluate the applicability of privilege, "without revealing information itself privileged."

*Muro v. Target Corp.*, 250 F.R.D. 350, 353 (N.D. Ill. 2007). Crown Crafts relies on *Muro* and asserts that, to the extent that any portions of its e-mail strings are non-privileged, it has independently produced those documents. It further claims that it produced redacted versions of the e-mail chains that included non-privileged communications subsequently sent to counsel for the purpose of securing legal advice and identified the Bates number of the redacted document on their privilege log.

In this Court's estimation, requiring individual entries for each e-mail in a chain helps to ensure that parties do not bury non-privileged communications in e-mail chains that were forwarded to counsel for legal advice. Although Crown Crafts has allegedly produced all non-privileged documents within the e-mail strings, "each message of the string which is privileged must be separately logged in order to claim privilege in that particular document."  *Rhoads Indus. Inc. v. Building Materials Corp. of Am.*, 254 F.R.D. 238 (E.D. Pa. 2008) (construing the holding in *Muro*). This Court recognizes that separately logging the e-mails contained within the string is an arduous and potentially

expensive task; it is, however, "essential to ensuring that privilege is asserted only where necessary to achieve its purpose." *In re Universal Serv. Fund*, 232 F.R.D. at 674. Accordingly, Crown Crafts shall provide an amended privilege log that lists each privileged e-mail contained in the listed e-mail strings separately.

### 3.   Affidavit

In regards to BreathableBaby's request for an affidavit attesting under oath to Crown Crafts claims of privilege for all documents on the log, this Court is unaware of any precedential law or local or federal rule that *requires* a party to provide such affidavit.   Although a party can satisfy Rule 26(b)(5)(A) by "produc[ing] a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its general counsel," there is no *requirement* to do so.   *See Isensee v. HO Sports Co., Inc.*, No. 06-cv-210 (ADM/AJB), 2007 WL 1118274, at *2 (D. Minn. 2007).   The affidavit is merely a tool to assist the party who is asserting privilege in sustaining its burden in providing a factual basis for the privilege of protection, and one that this Court recommends providing; however, this Court finds no basis for compelling Crown Crafts to provide such affidavit.[1]

Accordingly, BreathableBaby's request for this court to compel Crown Crafts to supply an affidavit attesting under oath to their claims of privilege is denied.

---

[1] It is important to note, however, that the issue of whether a sufficient legal and factual basis exists to assert privilege over the documents in Crown Crafts' privilege log is not at issue in the instant Motion.

## III.    CONCLUSION

Based upon the foregoing and the records, memoranda, and oral arguments of

counsel, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion to Compel (Docket No. 56) is **GRANTED IN PART** and **DENIED IN PART** as set forth above;

2. Each party shall bear its own costs and expenses in connection with this Motion;

3. All prior consistent orders remain in full force and effect; and

4. Failure to comply with any provision of this Order or any other prior consistent Order shall subject the non-complying party, non-complying counsel, and/or the party such counsel represents to any and all appropriate remedies, sanctions, and the like, including without limitation: assessment of costs, fines and attorneys' fees and disbursements; waiver of rights to object; exclusion or limitation of witnesses, testimony, exhibits, and other evidence; striking of pleadings; complete or partial dismissal with prejudice; entry of whole or partial default judgment; and/or any other relief that this Court may from time to time deem appropriate.


Dated: May 30, 2013                             s/ Tony N. Leung
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota


                                                *BreathableBaby, LLC v. Crown Crafts, Inc., et al.*
                                                File No. 12-cv-94 (PJS/TNL)